## Case No. 15,741b.

### UNITED STATES v. MATTHEWS et al.

[2 Betts, C. C. MS. 49.]

Circuit Court, S. D. New York. Dec. 18, 1843.

CRIMINAL LAW — JOINT INDICTMENT — SEPARATE TRIALS—DRAWING JURIES—MURDER — DECLARATIONS AND ADMISSIONS — PROOF OF CORPUS DELICTI.

[1. Prisoners jointly indicted cannot claim separate trials as matter of right, but the matter rests in the sound legal discretion of the court, which cannot be governed by fixed rules. And in a capital case the court will be disposed to secure the prisoner against the ininfluence of any testimony not strictly applicable to him, by allowing a separation.]

[2. The act of July 20, 1840 [5 Stat. 394], has changed the method of obtaining juries practiced in the federal courts under the act of 1789 [1 Stat. 73], and in case of a deficiency of jurors it is competent for the court, during the term to order a second venire.]

[3. It is not necessary that the marshal or clerk, or any state judge, should be present at the drawing; but when those officers properly certify, as their official act, the panel to the court, this constitutes it the jury for the term. The deputy marshal and deputy clerk are competent officers to superintend the drawing and certify the names drawn to the clerk and marshal.]

[4. The fact that declarations and admissions of the prisoner were made in answer to questions put by the witness does not render them inadmissible, it appearing that no means of persuasion or intimidation were used. Nor is it material that the admissions were made to an individual, and not in court, or to a magistrate conducting a judicial inquiry.]

[5. Declarations and admissions of one charged with participating in the crime, made in the presence of the accused, and without contradiction by him are inadmissible, under the more recent authorities.]

[6. The corpus delicti, in a case of murder, may be implied from circumstances naturally conducing to that conclusion; and when such circumstances are proved, whether they afford a violent or only a reasonable presumption of the death, the declarations of the accused in regard thereto are admissible in evidence.]

Indictment [against William Brown, David Baker, George Matthews, and William Webster] for murder of Nicoll, master of schooner Sarah Lavinia, on the high seas, 14th or 15th July, 1843. Webster not apprehended.

Mr. Hoffman moves the trial of the other two prisoners, who are placed at the bar.

Mr. Price reads the deposition of Brown, that he is informed and believes that the district attorney intends to offer against him no evidence other than circumstantial, and as against Matthews he intends to offer his admissions and confessions, and that those admissions implicate the deponent, and expressing his belief that he cannot have a fair and impartial trial unless tried separately from Matthews.

Price & Nash, move such separate trial.

Mr. Hoffman opposes the motion, and cites U. S. v. Marchant, 12 Wheat. [25 U. S.] 480; U. S. v. Gilbert [Case No. 15,204]; U. S. v. Wilson [Id. 16,730]; and Case of Braganza Pirates, tried in this court —— term, 18—— [Case unreported].

O. Hoffman, U. S. Atty.

Haskett, Nash & Price, for prisoners.

BETTS, District Judge. The cases cited by the district attorney prove that prisoners jointly indicted cannot claim it as a matter of right that their trial shall be separate. It rests in the sound legal discretion of the court to determine whether the indictment shall be traversed and tried in the form pre-

sented by the grand jury, or whether each party may be separated from those he is associated with by the grand jury and have his case disposed of by itself. This discretion cannot be governed by fixed rules. It must necessarily vary in its exercise according to the exigencies of the particular cases, and according to the individual impressions of the judges who administer it. It is to be borne in mind that, though the indictment is joint, the accused pleaded separately, and ought not to be committed or any way affected by the termination of either of the other issues. Neither should his case be prejudiced by testimony applicable solely to others indicted with him. The duty of the court and jury undoubtedly is to discriminate the evidence, and apply the parts where they justly belong, and in many cases this may be done with perfect security to the rights of all. One court may have higher confidence in its ability to impress this discrimination on juries and of their observance of the instructions than others could safely entertain, and accordingly would not regard the particulars that such diversity of testimony was to be presented, as seriously affecting the question. As a general principle, however, it cannot be doubted that serious danger may arise to a prisoner from a misapprehension of evidence given in the case, but which does not legally touch his issue.

A learned and judicious writer on evidence says it is morally impossible that the hearing of confessions of one prisoner implicating others should not operate to the prejudice of the parties implicated, notwithstanding the instructions of the court to the jury to the contrary. 4 Starkie, Ev. 54, note t. In a capital case, and in favor of life, I am disposed to secure every protection to the prisoner against the influence of testimony not strictly applicable to him, and shall therefore order the trial of the prisoner Brown, on his plea, to be separated from that of his associates. This decision is to be limited in its effect to the particular case as presented, and is not to seem as a rule in respect to the other indictment, much less in regard to ordinary felonies and misdemeanors.

The clerk therefore proceeding to empanel the jury, Mr. Price, in behalf of the prisoner, ore teneris challenged the array, because the jurors had not been drawn conformably to the act of congress of Sept. 24, 1789, § 29, and Rev. St. § 804, and also because not only the original panel of 36 jurors is served on this prisoner, but also a second panel of like number, drawn on a day subsequent.

Mr. Hoffman demurs to the challenge, and opposes the motion. The pleadings are admitted to be of the same effect as if in writing and full form.

BETTS, District Judge. The court, during the term ordered a second venire because of deficiency of jurors and the clerk regularly entered the order on the minutes. The act of congress of July 20, 1840, has changed the method of obtaining juries, practised in the United States courts under the act of 1789; and the rules adopted by this court under the authority of the act of 1840 point out the course that has been pursued by the officers in drawing those juries. It is not necessary that the marshal or clerk or any state judge should be present at the drawing, but when the marshal and clerk properly certify, as their official act, the panel to the court, this constitutes it the jury for the term. The deputy marshal and deputy clerk are competent officers to superintend the drawing and certify the names drawn to the marshal or clerk. If there is any defect or want of formality in their proceedings or certificate the counsel may have the certificate produced and considered by the court, or may present, as substantive causes of challenge, any objections of irregularity or want of conformity to the requirements of the law in drawing the panel. Challenge overruled.

Mr. Russel (minutes No. 11, p. 65) in his testimony stated the declarations or admissions of the prisoner to him, after his arrest, in respect to the death of the captain and mate.

The counsel for the prisoner objected to the reception of these confessions upon the ground that they were obtained by the witness, in answer to questions put by him to the witness.

BETTS, District Judge. It appearing very satisfactorily to the court that the witness employed no means of persuasion or intimidation to induce the declarations offered in evidence, their admissibility rests upon the general rules of evidence in respect to proof of that character. The elementary writers and the adjudged cases, recognize it as an incontrovertible principle of law that confessions voluntarily made by a party accused are competent evidence against him, in criminal trials for every grade and magnitude of offence. 1 Chit. Cr. Law, 464; 4 Starkie, Ev. (Metcalf's Ed.) 49, 50; Greenl. Ev. 247, 250. The books are emphatic in their cautions as to the credit of such confessions and suggest many weighty considerations which should be attentively regarded by the jury in estimating the bearing and effect of the admission of a prisoner. But with those cautions in view, the declaration must be received and weighed as evidence in the case and oftentimes conclusive in its character against the accused. Nor is there anything in the objection that the admissions were made to an individual and not in court or to a magistrate conducting a judicial inquiry. The authorities repudiate that distinction and recognize this species of evidence as legal solely because it is the free act of the party and comes from the one best knowing the fact asserted and most interested to state it least injuriously to himself. It is to be further observed, that the declarations offered in evidence are no direct admissions of criminality by the prisoner; they go to establish collateral facts. which may be consist-

ent with his innocence or may by connection with other facts become impressive evidence of his guilt. Portions of this species of proof have been already gone into without exceptions on the part of the prisoner's counsel. Thus testimony has been given of the prisoner's declarations to various persons of the cause of his coming ashore in a boat, of the route of his travel, of the ownership of property in his possession and the place and manner of its acquisition, &c., &c., and like reason authorizes the government to give in evidence his declaration respecting the drowning and death of the master and mate. The declarations and admissions of Matthews, implicating the prisoner, and offered in evidence as made in his presence and without contradiction or denial by the prisoner, although at first I was inclined to admit them in consonance with the accepted rule of evidence in civil cases (Starkie, Ev. pt. 4, p. 38), yet on further examination I am satisfied they rest on different principles, and ought to be excluded. The more recent decisions look with great disfavor to the implication as by admissions of a party accused of a crime, because his participation is asserted in his presence by a third person without being denied by him. 14 Serg. & R. 393; 3 Starkie, 33; 3 Car. & P. 103. There is a sound reason for giving less effect to this silence of a party in relation to assertions charging him with a crime than to those affecting his pecuniary interest, because the mind is more liable to be disturbed and the judgment be left uncertain as to what is proper to be done, under an imputation touching his liberty or life, than one solely concerning his property; and, indeed, it may be consistent with the most entire innocence that a party should abstain from any reply to such charges, either treating them with contempt or being overpowered by their unexpectedness or audacity. I think the rule goes to sufficient length in allowing the plain and deliberate admissions of the accused to third persons to be given in evidence against him, and that no implication ought to be received as evidence of guilt, because he has not replied to the statements of another imputing to him a guilty knowledge of a participation in the felony and murder charged in the indictment. This evidence is accordingly overruled.

At the close of the testimony, the counsel for the prisoner moved the court to instruct the jury that the corpus delicti, the death of Nicoll, could not be proved by the admissions or declarations of the prisoner, and that unless that fact was established to their satisfaction by other evidence independent of any confession, a verdict of acquittal must be rendered.

BETTS, District Judge. It would not be consonant to the well-established rule of law to convict of homicide on the uncorroborated declarations of the accused that death had been inflicted or had occurred in his presence. Wills, Ev. 84 (25 Law Lib. N. S.) 2 Leach, 571. Lord Hale was inclined to the opinion

that no evidence of the death was sufficient short of proof that the body had been seen after death. This doctrine is not supported by the cases, and Judge Story (U. S. v. Gibert [Case No. 15,204]) justly remarks that the rule, if adopted in strictness, would afford the most complete protection and indemnity from the worst offences, and would amount to an unusual condonation of all murders committed on the high seas. The confession of the death is accordingly admissible in evidence, and if corroborated by the proofs, will be sufficient foundation for a conviction. The death of Nicoll may be inferred or implied from circumstances naturally conducing to that conclusion; and whether such circumstances afford a violent or only a reasonable presumption of the fact, the declarations of the prisoner may properly be taken into account in fixing their effect and application. If, then, the extraneous facts in evidence conduce strongly to prove the death of Nicoll, the declarations of the prisoner in respect to that matter can properly be added to them and be taken into estimation in determining the fact of his death. The declaration, however, is to be taken as a whole, and all parts of it are evidence. The assertion of the decease of the missing mate is not to be separated from the concomitant assertion that he came to his death accidentally in a struggle with the captain, in which both fell overboard and were drowned. The whole statement must be taken into consideration and be weighed by the jury. The rule, however, is equally clear and explicit that the jury are not bound to give the same effect to the excusatory part of the declaration as to that implicating the prisoner. 1 Phil. Ev. 83. The whole is to be judged of in collection and comparison with the other facts in proof.